# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| MICHAEL A. McCANN, | NO. C11-1631-TSZ-JPD |
|---|---|
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Michael A. McCann appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 45-year-old man with a college education. Administrative Record ("AR") at 35-36. His past work experience includes employment as an art director, graphic designer, photography printer, day laborer, and desktop

REPORT AND RECOMMENDATION - 1

publishing tutor. AR at 37-44. Plaintiff was last gainfully employed before January 15, 2006. AR at 14.

On March 4, 2008, Plaintiff filed a claim for SSI payments. On March 13, 2008, he filed an application for DIB, alleging an onset date of January 15, 2006. AR at 156-60. Plaintiff asserts that he is disabled due to bipolar disorder. AR at 175.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 106-112, 116-126. Plaintiff requested a hearing, which took place on November 30, 2009. AR at 12. On January 15, 2010, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 12-23. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 1-5. On September 30, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 1, 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. McCann bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age,

education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On January 15, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since January 15, 2006, the alleged onset date.

3. The claimant has the following severe impairments: affective mood disorder and substance addiction disorder, in reported 18-month remission.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work including understanding, remembering and carrying out simple two to three step instructions, such as changing linens, making beds, and vacuuming carpets; he has average ability to perform sustained work activities, that is, he can maintain attention and concentration, persistence and pace in an ordinary work setting on a regular and continuing basis, that is, 8 hours a day, for 5 days a week, or an equivalent work schedule, within customary tolerances of employers rules regarding sick leave and absence; and he can make judgments on simple work-related

decisions, respond appropriately to supervision and coworkers, and deal with changes all within a stable work environment. The claimant is not capable of dealing with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process; however, incidental contact with the general public is not precluded.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1964 and was 41 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2006 through the date of this decision.

AR at 14-23.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ assessed all of the opinions of the state agency medical consultant Dr. Eugene Kester;

2. Whether the ALJ properly assessed the opinion of Jane Knickerbocker, MHP;

3. Whether the ALJ properly rejected the opinion of Martin Knutson, MA; and

4. Whether the ALJ properly assessed the testimony of Erica Horn.

Dkt. No. 16 at 1-2.

---

[2] The actual date is deleted in accordance with Local Rules W.D. Wash. CR 5.2.

## VII. DISCUSSION

A. <u>The ALJ Erred in Failing to Consider All of the Opinions of State Agency Medical Consultant Eugene Kester, M.D., When Formulating the RFC Assessment.</u>

The ALJ's decision references the opinion of state agency medical consultant Eugene Kester, M.D., but does not reference each of the observations noted by Dr. Kester are reflected in the ALJ's RFC determination. Dkt. 16 at 11. According to Plaintiff, the ALJ was required to explain why Dr. Kester's entire opinion was not adopted. *See* Dkt. 16 at 11 (citing SSR 96-6p).

1. <u>Legal Standards Regarding Medical Opinions of Non-Examining Physicians</u>

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling[3] ("SSR") 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996). Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

2. <u>Dr. Kester's Opinion</u>

The ALJ gave "significant weight" to Dr. Kester's opinion and described his opinion as follows:

---

[3] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

> In June 2008, Dr. Kester concluded that the claimant is able to understand, remember and carry out both non-complex tasks and "likely a variety of detailed tasks," and has only mild to moderate limitations in all functional areas including social functioning and concentration, persistence and pace. Dr. Kester noted that the claimant "may be limited in maintaining concentration for extended periods," and "would do best either working independently or limited to small groups of familiar co-workers." Dr. Kester further concluded that the claimant can have superficial contact with the public, adapt to changes, avoid medication and dosages.

AR at 19. When formulating the RFC, the ALJ did not reference Dr. Kester's opinions that Plaintiff would do best working alone or in a small, familiar group, or that Plaintiff would do better "with a supervisor who can convey the assignments succinctly and then delegate without micromanaging" (AR at 433):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work including understanding, remembering and carrying out simple two to three step instructions, such as changing linens, making beds, and vacuuming carpets; he has average ability to perform sustained work activities, that is, he can maintain attention and concentration, persistence and pace in an ordinary work setting on a regular and continuing basis, that is, 8 hours a day, for 5 days a week, or an equivalent work schedule, within customary tolerances of employers rules regarding sick leave and absence; and he can make judgments on simple work-related decisions, respond appropriately to supervision and coworkers, and deal with changes all within a stable work environment. The claimant is not capable of dealing with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process; however, incidental contact with the general public is not precluded.

AR at 16. The vocational expert did, however, address one of those specific opinions of Dr. Kester's at the hearing. *See* AR at 98 (Plaintiff's attorney posing hypothetical question regarding multiple limitations, including "needing a supervisor who succinctly conveys assignments and then delegates without micromanaging"). The ALJ did not address, either in the RFC assessment or at the hearing, Dr. Kester's opinion that Plaintiff would work best either alone or with a small, familiar group.

REPORT AND RECOMMENDATION - 8

The Commissioner argues that because the disputed opinions of Dr. Kester were phrased as recommendations as to Plaintiff's best-case workplace scenario (rather than as a diagnosis or a statement of functional capacity), the ALJ did not err by excluding those "recommendations" from the RFC. *See* Dkt. 18 at 5 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)). In *Valentine*, the Ninth Circuit held that recommendations as to how a claimant might cope with particular symptoms — as opposed to diagnoses or statements of functional capacity — are not opinions of limitation that must be included in an ALJ's RFC:

> Valentine asserts . . . that Dr. Storzbach also limited him to "highly routinized, overlearned tasks with low cognitive demand." To be sure, the doctor noted that Valentine "is less likely to have difficulty with [such tasks]." But this notation appeared in a section of Dr. Storzbach's report entitled "Recommendations." Nowhere in this section does Dr. Storzbach indicate that Valentine is incapable of working *except* under the recommended conditions. Indeed, he pointed out that Valentine's "mostly normal test performance with multiple cognitive strengths suggests that [he] is capable of at least partially compensating for his deficits." Thus, we agree with the SSA that Dr. Storzbach's observation about "highly routinized, overlearned tasks with low cognitive demand" is neither a diagnosis nor a statement of Valentine's functional capacity. It is rather a recommended way for Valentine to cope with his PTSD symptoms. The ALJ therefore did not err by excluding it from the RFC.

574 F.3d at 691-92 (emphasis in original).

The Court agrees with the Commissioner that Dr. Kester's opinions in his "summary conclusion" section about conditions Plaintiff where "do best" or "do better" are similar to the "recommendations" in *Valentine*, because Dr. Kester did not state that Plaintiff could not work *unless* those conditions were present.

But this case is distinguishable from *Valentine* when Dr. Kester's entire report is considered. Dr. Kester's "recommendations" were included in the "summary conclusion" at the end of his report, but earlier in the report Dr. Kester found Plaintiff "moderately limited" as

REPORT AND RECOMMENDATION - 9

1  to "The ability to work in coordination with or proximity to others with being distracted by

2  them" and "The ability to accept instructions and respond appropriately to criticism from

3  supervisors." AR at 431-32. The ALJ did not address those limitations in the RFC

4  assessment, and did not include those limitations in the hypotheticals posed to the vocational

5  expert.[4] The ALJ's failure to address those limitations was error, because "[i]n assessing RFC,

6  the adjudicator must consider limitations and restrictions imposed by *all* of an individual's

7  impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (Jul. 2,

8  1996). Though the Commissioner argues that this error could be harmless because none of the

9  jobs identified by the vocational expert require interaction with other people, the

10 Commissioner fails to address the effect of Plaintiff's moderately limited ability to respond

11 appropriately to supervision. Because it is unclear how the vocational expert would have

12 incorporated the limitations that the ALJ failed to address, the error is not harmless and this

13 matter must be remanded for further proceedings. *See Embrey v. Bowen*, 849 F.2d 418, 423

14 (9th Cir. 1988).

15 B.     The ALJ Erred in Assessing the Opinion of Jane Knickerbocker.

16     Plaintiff contends that the ALJ erred in discounting the opinions of Jane

17 Knickerbocker, MHP, who met with Plaintiff a number of times and assessed Plaintiff's

18 cognitive and social functioning. Ms. Knickerbocker is not a physician, but is considered an

19 "other source." *See* SSR 06-3p, 2006 WL 2263437 (Aug. 9, 2009).

---

[4] Though, as noted above, the Plaintiff's attorney did reference the limitation regarding supervisor micromanaging in a hypothetical, the limitation was included with a string of other limitations. AR at 98. Based on the combination of those limitations, the vocational expert testified that the hypothetical individual "would most likely be terminated based on his behavior at the worksite." *Id.*

1. Legal Standards Regarding "Other Source" Opinions.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such "other" sources as nurses and medical assistants. *See* SSR 06-03p, 2006 WL 2263437 (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he or she must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

2. Ms. Knickerbocker's Opinions.

Jane Knickerbocker, MHP, completed a DSHS psychological evaluation form on September 12, 2007, indicating that Plaintiff had some "severe" and "marked" limitations in cognitive and social functioning. AR at 322-325. The record also contains a November 6, 2007 report completed by Ms. Knickerbocker after a 90-minute assessment session. AR at 352-53. The ALJ assigned "less weight" to Ms. Knickerbocker's opinions:

> The undersigned gives less weight to the opinion of consultative examiner Jane Knickerbocker, MHP, who concluded that the claimant's "mood disorder" resulted in marked to severe limitations in both cognitive and social factors. Ms. Knickerbocker stated that "at this time, Mr. McCann's judgment and decision making are compromised because of his withdrawal, his anger and intolerance;" she further stated that although he "has been successful," he "cannot focus or concentrate well enough to even maintain his own household".

REPORT AND RECOMMENDATION - 11

> She concluded that the claimant "has been unable to maintain employment because of his mental illness." However, this opinion relies on the claimant's subjective reports/complaints rather than specific clinical findings. In addition, the opinion is inconsistent with the overall medical record, the opinions of the state medical consultants and the claimant's range of activities (which include daily hygiene and grooming; household repairs/chores; light cleaning; taking walks; shopping; using public transportation, and using a computer), all of which indicate that his mental condition is not of a disabling level of severity.

AR at 20 (internal citations omitted). The Plaintiff contends that the ALJ erred in three ways: (1) by assuming without evidence that Ms. Knickerbocker's opinions were based on Plaintiff's self-reports; (2) by finding Ms. Knickerbocker's opinions to be "inconsistent with the overall medical record"; and (3) finding Ms. Knickerbocker's opinions to be inconsistent with Plaintiff's self-reported daily activities. Dkt. 19 at 5-6.

As to the Plaintiff's first argument, the Court agrees. There is no suggestion within Ms. Knickerbocker's report that all of her opinions are based on Plaintiff's self-reports. Some of her specific notes reflect her personal observations of Plaintiff, such as "In a new living setting he is alienating everyone," "Appears to be an immense amount of repressed anger," and "Presents as focused and logical." AR at 324, 353, 364. Ms. Knickerbocker met with Plaintiff on multiple occasions and her reports reflect that personal interaction. While the ALJ was entitled to discount Ms. Knickerbocker's opinions to the extent that they were based on Plaintiff's non-credible self-reports, the ALJ did not explain which of Ms. Knickerbocker's opinions were so discounted but instead categorically discounted Ms. Knickerbocker's opinions.

As to the Plaintiff's second argument, the Court also agrees. The ALJ did not explain which part of Ms. Knickerbocker's opinions were contradicted by which part of the overall medical record, but simply declared them to be inconsistent. AR at 20. The Commissioner suggests that Ms. Knickerbocker's opinions contradict the opinions of consultative examiner

Dr. David Mashburn, Ph.D. Dkt. 18 at 7-8. Dr. Mashburn found that Plaintiff had only two "moderate" functional limitations (ability to exercise judgment and make decisions), and was otherwise either not limited or only "mildly" limited. AR at 244. Dr. Mashburn evaluated Plaintiff only once, before he began treatment with Ms. Knickerbocker, and relied upon Plaintiff's self-report to at least some degree. *See* AR at 244 (Dr. Mashburn notes "[Plaintiff] has always handled himself well.") Particularly under these circumstances, Dr. Mashburn's report does not constitute the "overall medical record." The ALJ's reasoning for discounting Ms. Knickerbocker's opinion is not sufficiently specific, because it is not clear which opinions the ALJ found to be inconsistent. *See Bruce v. Astrue*, 557 F.34d 1113, 1115 (9th Cir. 2009) (holding that an ALJ must provide "specific" reasons that are "germane to each witness" for rejecting lay testimony).

As to Plaintiff's third and final argument, the Court agrees. It is unclear why most of the Plaintiff's daily activities listed by the ALJ would be inconsistent with Ms. Knickerbocker's opinion. *See* AR at 20 (identifying "daily hygiene and grooming; household repairs/chores; light cleaning; taking walks, shopping; using public transportation, and using a computer" as Plaintiff's inconsistent daily activities). Most of Ms. Knickerbocker's opinions related to Plaintiff's ability to use judgment, make decisions, and control his anger; daily hygiene, household chores and cleaning, walking, shopping, and using public transportation and computers are completely unrelated to those issues. The Commissioner points to Ms. Knickerbocker's statement that Plaintiff lacked the focus to maintain his own household, but this statement is not inconsistent with Plaintiff's activities because Plaintiff did not maintain his own household: he lived in shared, subsidized housing. AR at 46. Thus, the Court finds that Plaintiff's daily activities do not contradict Ms. Knickerbocker's opinions, and thus this is not a germane reason to discount Ms. Knickerbocker's opinions.

REPORT AND RECOMMENDATION - 13

On remand, the ALJ shall reconsider the weight to be accorded Ms. Knickerbocker's opinions.

C. The ALJ Erred in Rejecting the Opinions of Martin Knutson Without Obtaining Mr. Knutson's Treatment Notes.

Plaintiff's treating therapist Martin Knutson completed a psychiatric review "check-box" form that lacked any clinical findings or treatment notes, but indicated that Plaintiff met medical listings 12.04 and 12.08. AR at 518-531. Mr. Knutson also completed a medical source statement form indicating that, *inter alia*, Plaintiff has "marked" limitations in his ability to understand and remember short, simple instructions; carry out detailed instructions; and make judgments on simple work-related decisions. AR at 515. The statement indicated that Mr. Knutson's findings were "based on observations and interactions with the client, client reports." AR at 515.

The ALJ assigned "less weight" to Mr. Knutson's opinions:

> [T]he undersigned also gives less weight to the opinion of treating therapist Martin Knutson, MA, who concluded that the claimant had marked limitations in the ability to understand and remember simple instructions, to carry out detailed instructions and make simple judgments, as well as moderate to marked limitations in the ability to interact appropriately with co-workers, supervisors and the public. Mr. Knutson did not provide clinical findings to support his conclusions other than to state that his assessment was based on "observations" and the claimant's "reports." Further, Mr. Knutson's opinion that the claimant has marked functional limitations impacting his ability to work appears to be contrary to the stated program goals of Mr. Knutson's treatment facility, which include helping the claimant "maintain [his] position at Bellevue Community College" and be "successful at [his] job/employment."

AR at 20-21 (internal citations omitted). Plaintiff argues that the ALJ should have requested Mr. Knutson's treatment notes (rather than looked only to the forms included in the record) before rejecting Mr. Knutson's opinions. Dkt. 16 at 15-16. The Commissioner contends that the record actually does contain Mr. Knutson's observations, and that the ALJ had no duty to further develop the record because the record was adequate. Dkt. 18 at 10.

REPORT AND RECOMMENDATION - 14

The Commissioner cites a number of pages in the record as containing Mr. Knutson's treatment observations. *See* Dkt. 18 at 10 (citing AR at 440, 445, 533-39, 541-48, 551-62, 572, 577). However, the Court's review of those sections reveals that they are actually not Mr. Knutson's treatment notes. Pages 440, 445, 572, and 577 are parts of records signed by Deborah C. Gaebler, ARNP. Mr. Knutson is identified as Plaintiff's case manager, but there is no indication in the records that the notes included in the records originated with Mr. Knutson rather than Ms. Gaebler. Pages 533-39, 541-48, and 551-622 are treatment plans. Thus, the Court disagrees with Commissioner and finds that the record does not contain Mr. Knutson's treatment notes.

The Court further finds that the ALJ erred in rejecting Mr. Knutson's opinions due to lack of clinical findings, when those findings exist as part of Mr. Knutson's ongoing treatment of Plaintiff and were simply not requested. An ALJ's finding that the record is inadequate triggers the ALJ's duty to conduct an appropriate inquiry. *See Smolen*, 81 F.3d at 1288. Because Mr. Knutson was Plaintiff's treating therapist, his notes would have been particularly relevant to the ALJ's inquiry regarding Plaintiff's capabilities. *See Gonzalez v. Astrue*, 2009 WL 2390843, at *5 (C.D. Cal. Aug. 3, 2009) (holding that where an ALJ finds that a treating physician's notes are particularly relevant, and should be requested by an ALJ if the physician's diagnoses cannot be substantiated without them). Thus, the ALJ erred by discounting Mr. Knutson's opinions for lack of support in the record, when the record could have and should have been supplemented. On remand, the ALJ shall request Mr. Knutson's treatment notes and reassess Mr. Knutson's opinions in light of those notes.

D.  <u>The ALJ Erred in Assessing Erica Horn's Testimony.</u>

Erica Horn, the executive director of non-profit organization Hero House, testified at the administrative hearing regarding her interactions with the Plaintiff for the previous eighteen

REPORT AND RECOMMENDATION - 15

months. The ALJ did not assign a specific level of weight to Ms. Horn's testimony, but did explain some reasons for discounting its weight:

> Lastly, the undersigned considered the testimony of Erica Horn, Executive Director of Hero House. Ms. Horn testified that Hero House is a facility which provides a "day program for disabled people with mental illness," exposing them to "vocational and social opportunities." Ms. Horn testified that she has known the claimant for 18 months while the claimant has performed volunteer work at the facility; she stated that he performs "a lot of solo work on the computer . . . he worked on a newsletter [and] tried to provide support around." She indicated that the claimant works three to five times per work but does not keep a regular schedule due to "his symptomology . . . his stages of mania" which include difficulty staying on task, sleeping during the day, and problems getting along with others. Ms. Horn testified that although the claimant "is very intelligent," he "has not entered a vocational program in 18 months because of his lack of ability to work with others and take redirection [and] he is not ready to be placed." Ms. Horn opined that unless there are "drastic changes" in the claimant's "symptom management," she did not "see him able to enter [the] work force – [the] employer would have to compromise." Ms. Horn's testimony generally reflects the same allegations made by the claimant, allegations that are not entirely credible for the reasons discussed above. Her opinion that the claimant's mental condition precludes him from performing all work is not supported by the objective medical evidence and is inconsistent with the opinions of the state medical consultants who found that the claimant is capable of performing simple, routine tasks with occasional interaction with co-workers and supervisors, and incidental contact with the public.

AR at 21. Plaintiff contends that the ALJ's reasons for discounting Ms. Horn's testimony are legally insufficient. As to the connection with Plaintiff's credibility, the Plaintiff contends that Ms. Horn's testimony is not dependent on Plaintiff's credibility[5] and should not have been so linked by the ALJ. Plaintiff also contends that the overall medical record does not contradict Ms. Horn's testimony, as found by the ALJ.

As to the Plaintiff's first argument, the Court agrees that the unchallenged reasons given for discounting Plaintiff's credibility are not germane to Ms. Horn. The ALJ found that Plaintiff lacked credibility because of inconsistent daily activities, the fact that Plaintiff worked

---

[5] The Plaintiff does not assign error to the ALJ's adverse credibility finding, but argues instead only that the reasons given for discounting Plaintiff's credibility do not apply to Ms. Horn.

during 2007 and 2009 (after his alleged disability onset date), and the fact that Plaintiff originally stopped working for reasons unrelated to his disability, and Plaintiff's denial of drug and alcohol use despite evidence of use. *See* AR at 17-19. There is no logical connection between these issues and Ms. Horn's testimony regarding her observations of and interactions with Plaintiff. Ms. Horn described Plaintiff's involvement at Hero House, his difficulty keeping a regular schedule and interacting appropriately with other people, his reactions to supervision, and other aspects of his functioning during the time she knew him. AR at 78-93. The ALJ did not explain why inconsistencies in Plaintiff's self-reports would have any bearing on Ms. Horn's testimony regarding her observations and interactions with Plaintiff, and thus the Court finds that Plaintiff's lack of credibility is not a specific, germane reason to discount Ms. Horn's testimony. *See Bruce*, 557 F.34d at 1115 (holding that an ALJ must provide "specific" reasons that are "germane to each witness" for rejecting lay testimony).

As to the ALJ's other reason for discounting Ms. Horn's testimony — that her testimony was inconsistent with the overall medical record, particularly the opinions of state medical consultants — the Court also agrees with Plaintiff. While Ms. Horn's opinions regarding Plaintiff's medications and treatment potential may well be beyond the scope of her expertise and experience, the ALJ did not explain how Ms. Horn's descriptions of Plaintiff's actual *functioning* — which constituted the bulk of her testimony — was inconsistent with the medical evidence. Furthermore, as noted above, the ALJ did not fully incorporate all of the limitations identified by Dr. Kester, and the excluded limitations identified by Dr. Kester are consistent with Ms. Horn's testimony about Plaintiff's difficulty with supervision and interaction with other people. Thus, in light of *all* the limitations identified in the medical record, it is unclear to what extent Ms. Horn's testimony was actually inconsistent. On

remand, the ALJ shall reassess Ms. Horn's testimony in light of all of Dr. Kester's opinions, and shall also reassess Ms. Horn's credibility separately from Plaintiff's credibility.

VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of May, 2012.

JAMES P. DONOHUE
United States Magistrate Judge